# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| DHP HOLDINGS II CORPORATION, | ) | |
| et al., | ) | CASE NO. 08-13422-MFW |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |
| | ) | |
| DHP HOLDINGS II CORPORATION, | ) | |
| DESA LLC, DESA HEATING LLC, | ) | |
| DESA SPECIALTY LLC, DESA | ) | |
| FMI LLC, DESA IP LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | ADVERSARY PROCEEDING |
| | ) | |
| v. | ) | NO. 09-52811-MFW |
| | ) | |
| PETER SKOP INDUSTRIES, INC., | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

**MOTION BY DEFENDANT PETER SKOP INDUSTRIES, INC. FOR PERMISSIVE ABSTENTION FROM THE EXERCISE OF JURISDICTION OVER ADVERSARY PROCEEDING**

**COMES NOW** PETER SKOP INDUSTRIES, INC. ("Defendant" or "PSI") and respectfully requests this Court to permissively abstain from exercising jurisdiction over the captioned adversary proceeding.

"The existence of a bankruptcy proceeding itself has never been and cannot be an all-purpose grant of jurisdiction." In re W.R. Grace & Co., 591 F.3d 164, 174 (3rd Cir. 2009).

**BACKGROUND**

1. The captioned Debtors filed their petitions for relief under chapter 11 of the Bankruptcy Code on December 29, 2008.

2. At the time of the bankruptcy filing, the Debtors were headquartered in Kentucky, and they had operated manufacturing and distribution facilities in Alabama, California, Kentucky, and Tennessee. (Declaration of Craig S. Dean, Chief Restructuring Officer of the Debtors, in Support of First Day Motions (docket no. 3, main bankruptcy docket), p. 3).

3. At all times relevant, PSI's headquarters were in Norcross, Georgia, at the address that Plaintiffs identify in their Summons' Certificate of Service of record with the Court.

4. At all times relevant, the Debtor that conducted business as "Desa Heating" sold to PSI gas heaters and gas fireplaces, and related products.

5. PSI generated all purchase orders from its headquarters, in Georgia, issuing the purchase orders to "Desa Heating" in Bowling Green, Kentucky. (Attached as **EXHIBIT A** is a true and correct copy of a representative purchase order. )

**The Plaintiffs' Complaint**

6. On or about November 20, 2009, DHP Holdings II Corporation, Desa LLC, Desa Heating LLC, Desa Specialty LLC, Desa FMI LLC, and Desa IP LLC (collectively, the "Plaintiffs" or "Debtors") filed, against PSI, a Complaint to Recover Amounts Owed to Debtors Pursuant to 11 U.S.C. § 542 and Object to the Allowance of Claims Pursuant to 11 U.S.C. § 502(d) (the "Complaint"), commencing the captioned adversary proceeding (the "Litigation").

7. In the Complaint, the Plaintiffs plainly admit the Complaint's very purpose -- "to recover accounts receivable." (Complaint, p. 1.)

8. Plaintiffs allege that between October 12, 2008 and February 1, 2009, Plaintiffs provided products to PSI with a value exceeding $123,261, but that PSI has not paid the Plaintiffs for such amount despite Plaintiffs' demand.

9. Count I of the Complaint is supposedly for turnover of property pursuant to 11 U.S.C. § 542. Plaintiffs allege they transferred products to PSI for an agreed price, that Plaintiffs invoiced PSI for the products, that PSI has refused to pay, that Plaintiffs' records show an account balance of $123,261, that such balance is mature and payable, and that Plaintiffs are entitled to recover such account balance from PSI.

10. Plaintiffs' Count II is for alleged breach of contract. In support, Plaintiffs allege: that PSI ordered product from Plaintiffs, thereby offering to buy product; that Plaintiffs accepted such offers when shipping the product and invoicing PSI; and that PSI accepted the product. Plaintiffs state that PSI breached such alleged contract to purchase product by not paying, and that Plaintiffs have been damaged in the principal amount of $123,261 for such alleged failure to pay.

11. In Count III, to disallow claims pursuant to 11 U.S.C. § 502(d), Plaintiffs allege they demanded payment from PSI of the alleged account balance, that PSI failed to pay same and that, pursuant to section 502(d), PSI's claims against Debtors, now and in the future, are disallowed until the alleged account balance is paid.

## PSI's Answer

12. PSI filed its Answer last month, on January 20, 2010 (the "Answer").

13.  In the Answer, PSI demands a trial by jury.

14.  In its Answer, PSI raises as a defense Plaintiffs' frauds committed upon PSI. In support, PSI alleged that when the Debtors shipped product to PSI after the mid-2008 timeframe, Debtors well knew they could not and would not pay on warranty and tort claims [1] associated with the product that Debtors were then shipping to PSI. [2] PSI alleged that, also during that timeframe, Debtors made fraudulent warranty promises in the invoices to PSI. Debtors shipped and invoiced for the product and made warranty promises, though they well know of the extreme financial distress and inability to respond on claims. PSI further alleged that Debtors were attempting to fraudulently induce PSI to accept and pay for product. PSI alleged that Debtors' inability to pay warranty and tort claims associated with product shipped after mid-2008 rendered the product fraudulently shipped to PSI (including gas heaters and gas fireplace product) commercially valueless. [3] See Affidavit of Michael Shop, attached hereto as **EXHIBIT C**.

15.  In its Answer, PSI also raises as a defense the Plaintiffs' breaches of contract. PSI alleged that under Debtors' warranty promises, Debtors are contractually obligated to

---

[1] PSI understands that purchasers of Debtors' product who presently or in the future hold tort claims against the manufacturer, the Debtors, may not be able to recover on such claims, due to (a) the Debtors' large self-insured retention amount and (b) Debtors' inability to pay such unsecured claims.

[2] When PSI litigates its fraud defense, PSI will rely, in part, on Debtors' own press statements (appearing on the internet) made at the time of the bankruptcy, establishing Debtors' plain knowledge that they were ceasing operations, closing plants, and embarking on a liquidation of its assets.

[3] PSI attempted to return the valueless product shipped, but Debtors refused to accept returns from PSI.

reimburse PSI on warranty claims brought by ultimate customers, but that the Debtors have repeatedly refused to pay PSI on warranty claims.

16. PSI also raises in its Answer a defense based on PSI's rights of setoff and recoupment against any amounts that PSI may owe to Debtors. As alleged in the Answer, the setoff and recoupment defenses apply to amounts owed and to be owed by Plaintiffs to PSI under known warranty claims, anticipated warranty claims, and tort claims naming PSI that may be brought by customers of PSI who bought product manufactured by the Debtors.

**Present Status of the Chapter 11 Cases**

17. On or about December 22, 2009, Debtors filed Debtors' Third Motion for an Order Pursuant to 11 U.S.C. § 1121(d) Further Extending the Time Periods During Which the Debtors Have the Exclusive Right to File a Plan and Solicit Acceptances Thereof (docket no. 768, main bankruptcy case) (the "Debtors' Exclusivity Motion"). In the Debtors' Exclusivity Motion, the Debtors sought, for a third time, an extension of the section 1121 exclusivity periods. By order dated January 13, 2010 (docket no. 800), this Court ordered that the Debtors' exclusive filing period is now extended through April 20, 2010.

18. It is unknown to PSI whether the Debtors will seek additional exclusivity extensions, if the Debtors will ever file any plan at all, and the timing of any plan filing. What the Debtors state is that they may "potentially formulate a plan." (Debtors' Exclusivity Motion, p. 6). At this point, there is no chapter 11 plan on file more than a year after Debtors originally filed their petitions.

19. These chapter 11 cases are solely for the purpose of liquidation. In the Debtors' Exclusivity Motion, Debtors admit, "[d]uring the pendency of these cases, the Debtors

have, among other things, made, and are continuing to make, substantial progress in disposing of substantially all of their assets." Id., pp. 4-5. "[T]he extensions will provide them with the additional time needed to complete the liquidation of their remaining assets." Id., p. 6.

20. It appears the liquidation is being conducted in these cases solely for the benefit of the Debtors' secured lenders, and that the estates are administratively insolvent. In its Supplement to Motion of the Official Committee of Unsecured Creditors for an Order Converting the Debtors' Chapter 11 Bankruptcy Cases to Cases Under Chapter 7 of the Bankruptcy Code (docket no. 769), the creditors' committee requests a conversion of the chapter 11 cases to chapter 7, including on the grounds that:

- "these cases were commenced and continue to run for the sole benefit of the Lenders. Now conversion to Chapter 7 is only a matter of timing because there are insufficient assets to pay the senior secured lenders in full;" (Id., p.1)

- "it is now apparent that the current process and administration of these cases will ultimately leave these estates administratively insolvent;" (p. 2)

- "it is unlikely that sufficient unencumbered assets will be available to satisfy unpaid administrative claims;" (p. 2)

- "there will be no remaining assets available to satisfy the superpriority administrative claims of the Lenders;" (p. 7)

- "the Debtors concede that almost all of the remaining assets being liquidated are subject to the Lenders' liens and will provide little to no value to the estates;" (p. 5) and

- "little remains to be done in these Chapter 11 proceedings." (p. 2)

Based on the within, including PSI's application of the discretionary abstention factors below, this Court, respectfully, should abstain from exercising jurisdiction over the Litigation.

## ARGUMENT

**Discretionary Abstention Considerations**

"Section 1334(c)(1) [of title 28] provides for abstention in the court's discretion. Courts have identified twelve factors relevant to discretionary abstention:

1. the effect or lack thereof on the efficient administration of the estate;
2. the extent to which state law issues predominate over bankruptcy issues;
3. the difficulty or unsettled nature of applicable state law;
4. the presence of a related proceeding commenced in state court or other non-bankruptcy court;
5. the jurisdictional basis, if any, other than section 1334;
6. the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
7. the substance rather than the form of an asserted "core" proceeding;
8. the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
9. the burden of the court's docket;
10. the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
11. the existence of a right to a jury trial; and
12. the presence of non-debtor parties."

In re LaRoche Industries, Inc., 312 B.R. 249, 253-54 (Bankr. D.Del. 2004) (Walrath, J.).

**A. The Effect or Lack Thereof on the Efficient Administration of the Estate / the Degree of Relatedness or Remoteness of the Proceeding to the Main Bankruptcy Case.**

Abstention would not meaningfully impact the efficiency of the administration of the estates. The Litigation is certainly not inextricably intertwined with administration of the bankruptcy estates. See Laroche, 312 B.R. at 254. It cannot be shown that the Litigation will determine the success or failure of the Debtors' bankruptcy efforts. The bankruptcy was not filed due to the Debtors' collection claim against PSI, and the chapter 11 cases (which may end up in chapter 7) do not hinge on the outcome of the Litigation. Prosecution of the Litigation in this Bankruptcy Court, instead of in another court, would have no genuine effect on a liquidation plan that has not been and might never be filed. Administration of these bankruptcy cases would not be disrupted if the Court abstained

from hearing this $123,000 collection suit. The Litigation's impact on the bankruptcy cases is de minimus.

It cannot be shown that the administration of these bankruptcy cases would be delayed if the Court abstained from hearing this $123,000 suit. At this point, "little has happened in this Adversary Proceeding. Therefore, the delay which may be occasioned by abstention will not be prejudicial." See In re Integrated Health Services, Inc., 291 B.R. 615, 619 (Bankr. D.Del. 2003) (Walrath, J.). The adversary proceeding has just begun, PSI having answered on January 20, 2010. In any event, in these cases in which no plan has been filed over a year into the bankruptcy (and in which no plan may ever be filed), there can be no urgent bankruptcy need for a determination of this collection action apparently brought in order to try and pay down the Debtors' secured lenders.

The Litigation is remote to the main bankruptcy cases. The Litigation against PSI will have no significant effect on the estates. It appears the Litigation will essentially determine whether Debtors' lenders will receive up to $123,000. A successful prosecution of the Litigation will not result in an enhanced distribution for creditors at large in the bankruptcy cases; yet even if an enhanced recovery for creditors would result, such would not mean the that Litigation is so related to the main bankruptcy case as to warrant the Court's retention of jurisdiction over it. See Laroche, 312 B.R. at 254.

Accordingly, the Litigation will not meaningfully impact the efficient administration of the cases, or the bankruptcy estates, or distributions to the creditors. This abstention matter is easily distinguished from cases in which bankruptcy courts have decided not to abstain, situations in which the litigation has a close nexus to the filed

chapter 11 plan, situations in which the litigation issues substantially interface with the bankruptcy case generally.

B. **The Extent to which State Law Issues Predominate over Bankruptcy Issues / the Difficulty or Unsettled Nature of Applicable State Law.**

State law issues clearly predominate over bankruptcy issues. In fact, there is no genuine bankruptcy issue in the Litigation. No provision of the Bankruptcy Code is genuinely implicated. As shown below, Plaintiffs do not state a claim under the section 542 "turnover" count (Count I), and they lack standing on the section 502 count (Count III).

This action is a contract action. Because state law issues predominate, this factor favors abstention. See LaRoche, 312 B.R. at 254.

Although PSI does not presently know of specific unsettled or difficult issues of state law involved in the Litigation, litigation and court determinations on PSI's fraud defense, for example, will be far from simple. While this Court is certainly capable of handling the matters raised in the Litigation, PSI respectfully submits that a state court is better suited to handle any unsettled or difficult issues of state law that may arise. See In re OMNA Medical Partners, Inc., 257 B.R. 666, 669 (Bankr. D.Del. 2000) (Walrath, J.) ("We are unaware of any unsettled or difficult question of Texas state law; however, the Texas state court is the better forum to decide such an issue, should one arise."); In re Sun Healthcare Group, Inc., 267 B.R. 673, 679 (Bankr. D.Del. 2000) (Walrath, J.) ("While California law on non-compete clauses is not unsettled, we conclude that the California state court is the better forum to decide the issue."); Integrated, 291 B.R. at 620 ("even if a matter does not involve unsettled issues of state law, where the state law issues so

predominate the proceeding as they do in this case, this factor weighs in favor of having the state court decide it.")

"Where a cause of action for monetary damages based primarily on state law can be litigated in state court without substantial delay and disruption to the orderly administration of the estate, the best forum for resolution of that action is state court, irrespective of whether the legal issues present unsettled questions of state law." In re Republic Reader's Service, Inc., 81 B.R. 422, 426 (Bankr. S.D.Tex. 1987) (emphasis in original).

The above state law-related factors favor abstention.

### C. The Presence of a Related Proceeding Commenced in State Court or Other Non-bankruptcy Court.

At this time, there is no other pending proceeding yet on the issues raised in the Litigation.[4] Nevertheless, as shown above, the timing of the determination of the collection suit for $123,000 in another court would not adversely impact the administration of these extended bankruptcy cases. Also, contract actions are routine for state courts.

The absence of a pending parallel proceeding does not favor retention of jurisdiction, given the stage and circumstances of the main case and adversary case.

### D. The Substance Rather than the Form of an Asserted "Core" Proceeding.

The substance of the supposed "core" proceeding is a pure state law-based breach of contract matter.

"[W]hether or not a matter is core is not determinative of decisions as to discretionary remand or discretionary abstention." In re Lyondell Chemical Co., 402 B.R.

---

[4] The lack of a pending parallel proceeding is not dispositive, but is only one factor, in considering discretionary abstention. See Integrated, 291 B.R. at 621.

10

596, 611, n. 32 (Bankr. S.D. N.Y. 2009). PSI also notes that in a previous case in which this Court concluded that the adversaries were related to the main bankruptcy cases and constituted "core" proceedings, this Court exercised its discretion to abstain. See OMNA, 257 B.R. at 669. In the Complaint, the Plaintiffs allege that the adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). However, Plaintiffs' characterization of the adversary proceeding as "core" is not sufficient to determine this abstention matter, and this Court can permissively abstain from core proceedings.

1. **Plaintiffs Hold No Genuine § 542 Turnover Claim in the First Place.** [5]

Plaintiffs have failed to state a viable section 542 claim (Count I), the claim cannot survive, and the claim therefore should be excluded from the analysis of core/non-core matters.

"It is settled law that the debtor cannot use the turnover provisions to liquidate contract disputes or otherwise demand assets whose title is in dispute." U.S. v. Inslaw, Inc., 932 F.2d 1467, 1472 (D.C. Cir. 1991). "Turnover under 11 U.S.C. § 542 is a remedy available to debtors to obtain what is acknowledged to be property of the bankruptcy estate." In re Asousa Partnership, 264 B.R. 376, 384 (Bankr. E.D.Pa. 2001).

As shown in the Answer, PSI directly disputes any contract liability to Plaintiffs. PSI has raised viable fraud, breach of contract and other defenses. PSI further disputes that

---

[5] Furthermore, in Plaintiffs' section 502(d) count (Count III), Plaintiffs attempt to disallow and suspend claims by PSI. The cause of action is not ripe. PSI has filed no proof of claim in the bankruptcy cases, and unsecured claims may be meaningless in the bankruptcy cases. Plaintiffs lack federal standing on this claim, the claim is therefore subject to dismissal, and the cause of action should be excluded from the abstention analysis. In any event, like the section 542 claim, the foundation and substance of the section 502 claim is an alleged state law breach of contract claim, and PSI's abstention arguments as to Plaintiffs' section 542 claim generally apply to the section 502 claim.

it holds money that is property owned by the estates. Of course, the Plaintiffs did not allege that PSI converted money that is owned by the estates, or identify an estate-owned trust fund being improperly held by PSI. Plaintiffs have not stated a Bankruptcy Code section 542 turnover claim, and the claim should be excluded from the core/non-core analysis.

### 2. Plaintiffs' "Turnover" Claim under Section 542 is Not a Core Matter.

In its "turnover" count, Plaintiffs have attempted to paint the breach of contract claim as a bankruptcy-type claim -- a section 542 turnover claim -- likely to support an argument that the Litigation belongs before this Court.[6] But regardless of what Plaintiffs wish to call it, the claim does not hinge on a Bankruptcy Code provision. In the section 542 count, Plaintiffs allege they sold product to PSI, that PSI will not pay, and that Plaintiffs are entitled to payment. What Plaintiffs have described is a breach of contract.[7]

"Courts in this district, in applying the Third Circuit's definition of core, have required that the action 'have as a foundation the creation, recognition, or adjudication of rights which would not exist independent of a bankruptcy environment, although of necessity there may be a peripheral state law involvement.' " Sun Healthcare, 267 B.R. at 678, quoting In re Delaware & Hudson Railway Co., 122 B.R. 887, 890 (D. Del. 1991); see also Integrated, 291 B.R. at 618 ("In this case, the Adversary Proceeding is not dependent on any provisions of the Bankruptcy Code nor is it a proceeding that could only

---

[6] Although the Plaintiffs attempt to couch the receivable collection matter in bankruptcy terms, PSI notes that in a previous case before this Court, upon claims to compel turnover under section 542, this Court exercised its discretion to abstain from hearing the turnover proceeding. See OMNA, 257 B.R. 666.

[7] Plaintiffs apparently contend that PSI holds money that is somehow owned by the bankruptcy estates. Such ownership issue would need to be determined by state law. "Property rights are determined as a matter of state law." OMNA, 257 B.R. at 669.

arise in the context of a bankruptcy case. The allegations . . . are quintessential state law causes of action. The Adversary Proceeding is, therefore, a non-core proceeding.") [8]

> Plaintiff's turnover claim does not satisfy the Halper test. Although turnover orders are considered "core" under 28 U.S.C. § 157(b)(2)(E), Plaintiff's contention does not meet the second Halper prong. The substance of the claim at issue in Plaintiff's turnover count is a pre-petition state law contract claim and could arise under any context, not just in bankruptcy. Because that claim is not a right exclusively conferred by the Bankruptcy Code, this factor favors abstention.

In re Valley Media, Inc., 289 B.R. 27, 31 (Bankr. D.Del. 2003) (Walsh, J.).

> [T]he essence of this claim is a contract dispute, not a bankruptcy law dispute. While the Debtor argues that the case involves a request for turnover of property of the estate under section 542, it is really only seeking to collect a debt it alleges is due to it under the Agreement. No substantive issues of bankruptcy law are involved. This factor favors abstention.

Laroche, 312 B.R. at 254.

The foundation and essence of the supposed section 542 claim is a state law contract and collection dispute, one that could easily arise elsewhere. The claim is not dependent or founded on a Bankruptcy Code provision, and no substantive bankruptcy issues are raised. The section 542 turnover count (Count I) is merely the Plaintiffs' breach of contract count cloaked in bankruptcy terminology. Plaintiffs' attempted section 542 turnover claim does not constitute a core matter, and the Litigation is a non-core proceeding.

### 3. Plaintiffs' Breach of Contract Claim is Not a Core Matter.

Plaintiffs' invoices were provided to PSI along with the applicable shipment and, according to the Plaintiffs, it was the invoices that allegedly constituted contract acceptance. Plaintiffs' Complaint exhibit shows that nearly all of the alleged contracts

---

[8] "Many proceedings are procedurally core; they are garden variety pre-petition contract disputes dubbed core because of how the dispute arises or gets resolved." In re Hagerstown Fiber Ltd. Partnership, 277 B.R. 181, 203 (Bankr. S.D. N.Y. 2002).

were formed (if at all) [9] prepetition, because the Complaint's Exhibit A shows that virtually all of the Debtors' invoices issued to PSI, on which Debtors have sued, were dated prepetition. Second, because Debtors' invoices to PSI were "net 30 days" (see **EXHIBIT B**), most of the alleged breaches occurred, and most alleged damage occurred, also prepetition. The crux of the Litigation is clearly prepetition activity, and this breach of contract action is a non-core matter. See Beard v. Braunstein, 914 F.2d 434, 445 (3rd Cir. 1990) ("We conclude that this action, involving pre-petition contracts, allegedly breached both before and after the filing of the petition, is entirely a non-core matter related to a case arising under title 11.")

The substance of the asserted "core" proceeding is a state law breach of contract matter.

### E. The Feasibility of Severing State Law Claims from Core Bankruptcy Matters to Allow Judgments to be Entered in State Court with Enforcement Left to the Bankruptcy Court.

As shown, the matters raised in the Litigation are non-core. Thus, there is no need to sever state law claims from core bankruptcy matters. PSI believes the Court should abstain, and allow a state court to decide Plaintiffs' collection proceeding. Subsequently, any recovery received by the Plaintiffs would become a small part of the distribution to be

---

[9] PSI's position is that there was no contract acceptance so as to form contracts. Plaintiffs have sued on alleged contracts that were never formed and are not enforceable. As PSI alleges in its Answer, the Debtors' shipments and invoicing (the supposed acceptance of contracts) and warranty promises, to PSI after mid-2008, were fraudulent. Debtors' actions were ineffective to constitute contract acceptance of PSI's purchase orders (all purchase orders were sent to the Debtor prepetition). There can be no pre- or post-petition breach of contracts that were not formed in the first place.

made to the Debtors' lenders, without disruption to the administration of the bankruptcy cases.

F.  **The Burden of the Court's Docket.**

On this factor, in July 2009, Judge Walsh stated, "with respect to the burden on this Court's docket, I would note the obvious. We are in the midst of the most severe recession and credit crisis in decades, and the volume of major chapter 11 filings in this Court has risen to an unprecedented level. Accordingly, this factor favors abstention." In re Fruit of the Loom, Inc., 407 B.R. 593, 601 (Bankr. D.Del. 2009) (Walsh, J.).

Furthermore, in this matter, because the fraud and other defenses raised by PSI have expanded the proceeding, and because fraud issues are typically fact-intensive, retention of jurisdiction over the Litigation would only add to the Court's burden.

G.  **The Likelihood that the Commencement of the Proceeding in Bankruptcy Court Involves Forum Shopping by One of the Parties.**

The Plaintiffs bringing the Litigation in Bankruptcy Court likely involves forum shopping by them. Black's Law Dictionary (8th ed. 2004) defines forum-shopping as "[t]he practice of choosing the most favorable jurisdiction or court in which a claim might be heard."

At all relevant times, the Plaintiffs were headquartered in Kentucky and PSI in Georgia. The purchase orders were generated in Georgia by PSI, issued to the Desa Heating Debtor in Kentucky. The sales transactions between the Desa Heating Debtor and PSI, the events in issue, did not occur in or involve Delaware. It therefore appears that the Plaintiffs chose to file the Litigation in this Court, on the basis that they believed it would be more favorable and advantageous to litigate their collection matter in the court in which they filed their bankruptcy cases. To be clear, PSI does not accuse Plaintiffs' counsel of

any unprofessional action. But the decision does constitute forum shopping, the commencement of the action in Delaware having no nexus to the events to be litigated was unfair, and the Bankruptcy Court was not the most appropriate forum.

H. **The Existence of a Right to a Jury Trial.**

In its Answer, PSI demands a jury trial. PSI is entitled to a jury trial on the issues so triable. "As this Court is not authorized to conduct jury trials, this factor favors abstention." See Laroche, 312 B.R. at 255.

## CONCLUSION

As this Court found in the LaRoche case, "the factors favoring abstention are the more substantive ones (the action involves only state law issues and will have no effect on the administration of the Debtor's estate)." See LaRoche, 312 B.R. at 255. Based on the foregoing, PSI respectfully requests that this Court permissively abstain from exercising jurisdiction over this adversary proceeding.

(Remainder of page intentionally left blank.)

DATED: February 18, 2010                TYBOUT, REDFEARN & PELL

                                        /s/ Sherry Ruggiero Fallon
                                        SHERRY RUGGIERO FALLON
                                        Bar ID # 2464
                                        750 Shipyard Drive, Suite 400
                                        P.O. Box 2092
                                        Wilmington, DE 19899-2092
                                        Tel: (302) 658-6901

                                        Of Counsel

                                        Bruce Z. Walker, Esquire
                                        COHEN, POLLOCK, MERLIN & SMALL
                                        Georgia Bar No. 731260
                                        3350 Riverwood Parkway, Suite 1600
                                        Atlanta, GA 30339
                                        Telephone:   (770) 858-1288
                                        Facsimile:   (770) 858-1277
                                        bwalker@cpmas.com

                                        ***Attorneys for Peter Skop Industries, Inc.***