# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: ) <br> ) <br> DHP HOLDINGS II CORPORATION, ) <br> et al., ) <br> ) <br> Debtors. ) <br> _____) <br> ) <br> DHP HOLDINGS II CORPORATION, ) <br> DESA LLC, DESA HEATING LLC, ) <br> DESA SPECIALTY LLC, DESA ) <br> FMI LLC, DESA IP LLC, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> PETER SKOP INDUSTRIES, INC., ) <br> ) <br> Defendant. ) <br> _____) | CHAPTER 11 <br><br> CASE NO. 08-13422-MFW <br> (Jointly Administered) <br><br><br><br><br><br><br><br> ADVERSARY PROCEEDING <br><br> NO. 09-52811-MFW |

## REPLY BRIEF IN SUPPORT OF MOTION BY DEFENDANT PETER SKOP INDUSTRIES, INC. FOR PERMISSIVE ABSTENTION FROM THE EXERCISE OF JURISDICTION OVER ADVERSARY PROCEEDING

**COMES NOW** PETER SKOP INDUSTRIES, INC. and respectfully files this Reply Brief in support of its Motion for this Court to permissively abstain from exercising jurisdiction over the captioned adversary proceeding.

In this Reply, PSI attempts to refrain from repeating material from the opening brief. See LBR 7007-2(b). PSI incorporates by this reference all of the material presented within and with the original Motion.[1]

---

[1] PSI filed with its Motion the affidavit of its principal, Michael Skop, and accompanying documentary evidence. In contrast, Plaintiffs filed no testimony to attempt to support their bald factual statements presented in the Response. Plaintiffs failed to offer any testimony whatsoever to refute the testimony of PSI. PSI respectfully requests this Court to consider the evidentiary

The Debtors are correct – their breach of contract lawsuit does effect the bankruptcy case. But that is not the issue; bankruptcy debtors always have that argument. The abstention issue is the <u>sufficiency</u> of the interrelationship between the litigation and the main chapter 11 case. In this case, the relationship is woefully insufficient. It would be most appropriate for this Bankruptcy Court to abstain from exercising jurisdiction over this Litigation. No matter how the Debtors try to spin it, the truth is that the Litigation does not meaningfully intertwine with the administration of what are, for the moment, chapter 11 cases. The most the Debtors' claims might bring to this large case, indisputably a liquidating case, is a nominal payment to the secured lenders. Such a payment would occur in either the context of a chapter 7 or liquidating chapter 11 case, though Debtors fail to assure on which track their case is headed.

The most appropriate forum is Georgia state court. The crux of the Plaintiffs' Complaint is a breach of contract claim. The Litigation is based on pure state law contract, fraud and other laws. The instant claims and defenses are considered on a routine basis in state court.

The Debtors' lawsuit claims do not involve undisputed, simple receivables claims. As shown by PSI in its Answer and its Motion, Desa fraudulently shipped the goods and invoiced PSI (the supposed contract acceptance), but Desa sues on these shipments nevertheless. PSI intends to prove that Desa was shipping and simultaneously invoicing PSI, when Desa well knew it could not and would not stand behind warranty and tort claims associated with the dangerous gas heater and gas fireplace product that Desa was

---

issues, and exclude from evidence all Plaintiffs' fact claims that were not supported by admissible evidence. Just one example is the Plaintiffs' absence of any evidence whatsoever on their argument on collection success, and the timing of collections, as adversely impacting the administration of their estates.

sending. Discovery should reveal exactly what Desa knew on its financial condition and exactly when, and even answer questions such as whether Desa may have "unloaded" goods and invoiced in order to create receivables such as those claimed to be owing from PSI.[2]

Upon due consideration of the abstention factors, particularly the substantive ones, this Court, respectfully, should permissively abstain.

A. **The Effect or Lack Thereof on the Efficient Administration of the Estate / the Degree of Relatedness or Remoteness of the Proceeding to the Main Bankruptcy Case.**[3]

An abstention in this instance would not at all interfere with or prevent an expeditious disposition of these bankruptcy cases.[4] Every bankruptcy debtor who files a claim to recover money from a non-debtor has the argument that the claim affects the estate. The issue, however, is the closeness of the Litigation's nexus to the main chapter 11. In this case, PSI has clearly shown that the Litigation is not "inextricably

---

[2] Debtors' dramatic assertion that the Motion is the first part of plan to engage in a war of attrition in order to prevent the collection of receivables might be appealing but for the fact that there is no true basis for the accusation. In fact, PSI looks forward to its "day in court" on its fraud and other defenses. Further, PSI is pleased that the Debtors filed PSI's September 29, 2009 letter to Debtors' counsel. The Court will see therein that what Debtors characterize as a "roadblock" is, in truth, PSI's plain presentation of legitimate defenses and its position, and PSI's continuing pleas to Debtors (which Debtors never even engaged) to accept the return of the commercially valueless goods fraudulently shipped by Desa. The position stated in the PSI letter is consistent with PSI's position taken in this Litigation.

[3] Of course, not every abstention factor leans in PSI's favor. For example, federal diversity jurisdiction could exist. Also, there are no non-debtor parties to the Litigation other than PSI. However, PSI shows that it prevails under the remaining factors, including those factors given the greatest weight by the courts.

[4] "At their center, what these factors seek to do is implement the function and purpose served by abstention under § 1334(c)(1): in deference to federalism, ensure that the jurisdiction of the bankruptcy court is exercised only when appropriate to the expeditious disposition of bankruptcy cases." In re Weldon F. Stump & Co., 373 B.R. 823, 828 (Bankr. N.D.Ohio 2007).

3

intertwined" with the administration of the estates and, in their Response, Debtors failed to show otherwise.[5] This Litigation is far removed from the main bankruptcy case.

The nature of this particular bankruptcy case must be considered. The Litigation has zero impact on a reorganization -- it is undisputed that the cases are liquidation only. Also, there is no contention that the chapter 11 case is centered around the Litigation. The administration of the chapter 11 cases would not be impaired by an abstention from hearing the Litigation. As the Debtors' Response confirms, what the estates are doing through the Litigation is trying to accumulate funds for possible, ultimate payment to creditors, through (1) distributions under a liquidation plan that may or may not be filed, or (2) a trustee's eventual distribution within a converted case. Should the Debtors be able to recover some portion of the $123,000 they claim as owing by PSI, such amount (nominal in this large case) would slightly augment what may be paid out to lenders. Although it has shown that it prevails under this factor, PSI submits that the timing of conclusion of the Litigation is less significant in this particular type of bankruptcy scenario.

Again, throughout this Reply, PSI refrains from repeating its material from the opening brief. However, PSI incorporates all material it previously presented.

B. **The Extent to which State Law Issues Predominate over Bankruptcy Issues / the Difficulty or Unsettled Nature of Applicable State Law.**

State law issues clearly predominate over the supposed bankruptcy law issues. State law is the foundation, essence and substance of all the matters raised in the

---

[5] Courts weigh some abstention factors more substantially than other ones, particularly the effect on the administration of the estate, whether the claim involves only state law issues, and whether the proceeding is core or noncore. See In re DBSI, Inc., 409 B.R. 720, 729 (Bankr. D.Del. 2009) (Walsh, J.).

Litigation. Even Debtors had to admit that "state contract law issues play a significant role." (Response, p. 7).

Further, Litigation of PSI's fraud defense will, due to its nature, be fact-intensive, and the fraud issues do complicate this contract action. PSI's Answer and the Motion make clear that this will not be a routine contract/collection proceeding. With all due respect to this Bankruptcy Court, a state court is a better forum to handle the claims and defenses raised in this particular Litigation.

PSI believes its defenses of state law fraud (fraudulent shipping, contractual acceptance, and invoicing) and of state law breach of contract will overcome the entire claim of the Plaintiffs. PSI has alleged a setoff defense, as well. That setoff defense also hinges on substantive state law. "Setoff is a matter of state law, but is preserved, with some restrictions, by section 553 of the Bankruptcy Code." In re Telephone Warehouse, Inc., 259 B.R. 64, 68 (Bankr. D.Del. 2001) (Walrath, J.) (internal footnote omitted).

In response to the Debtors' assertion that future warranty claims estimation is a bankruptcy law issue in this matter, PSI has filed no claim in the bankruptcy cases. Also, 28 U.S.C. § 157(b)(2)(B), relied on by the Debtors, deals with estimation of claims for purposes of confirming a plan. Debtors rely on this statute, but with no showing whatsoever that this Court will even see a plan filing, much less a plan confirmation process.

Debtors also assert there may in the future arise some section 542 and 549 bankruptcy law issues for this Court to entertain. Should a court in the future find there are no enforceable contracts for the "sales" by Desa to PSI, PSI remains very pleased to return the product (commercially worthless, in PSI's view) as it has tried to do

repeatedly, and there would be no need for a turnover action against the defendant, PSI (or for a section 549 action). Further, the supposed section 542 bankruptcy law issue that might potentially arise for this Court, following a ruling that the "contracts" are not enforceable, is only speculative, the argument assuming facts and an adversary complaint (for turnover of product, not money) that are not even before the Court.

PSI refrains from repeating material from the opening brief, and incorporates by reference all material presented originally.

C. **The Presence of a Related Proceeding Commenced in State Court or Other Non-bankruptcy Court.**

There is no other proceeding currently pending on the claims raised in the Litigation. However, the timing of resolution of the Litigation is not a problem here, as the Answer has only very recently been filed in this proceeding, a proceeding that would clearly be a routine type for a state court to handle. Although PSI believes it prevails on the timing issue, as discussed in Section A above, PSI submits that the timing of conclusion of this Litigation is less significant in this particular bankruptcy scenario. (This is a liquidating case; there is no plan on file or assurance there will ever be a plan; the chapter 11 is in not centered around the Litigation; and the Litigation is merely a means to accumulate slightly more for ultimate distribution to the lenders within either a chapter 7 or a liquidating chapter 11.)

D.  **The Substance Rather than the Form of an Asserted "Core" Proceeding.**

The substance of the asserted "core" bankruptcy proceeding is a state law breach of contract matter.

1.  **Plaintiffs' Failure to State a Section 542 Claim in the First Place.**

In the Complaint, the Plaintiffs failed to state a claim under Bankruptcy Code section 542, and Count I is subject to dismissal under Bankruptcy Rule 7012(b)(6). PSI refers the Court to PSI's citations, in the Motion, on turnover actions attempted when contracts are in dispute, and alleged property of the estate is in dispute, and on what is a proper utilization of the turnover provision.

In this instance, there are direct disputes regarding the "turnover" claim, including on issues (a) of whether the amounts sought by Plaintiffs accrued, came due, became payable, and are owing; (b) of whether the alleged contracts sued upon arose from Desa fraudulent shipment / contract "acceptance," were ever formed, and are enforceable; and (c) of whether PSI possesses property rightfully owned by the bankruptcy estates. The "turnover" count does not resemble an estate claim to collect an undisputed contract amount due and owing, or to recover undisputed estate property. In their Response, the Debtors offer that "[i]f the [fraud] defense is denied, then Debtors have a claim for a matured debt, due and payable." (Response, p. 10) (emphasis added). The Debtors therefore have admitted that Count I does not concern an undisputed contract. The section 542 count is not a viable "turnover" claim.

To try and save the section 542 claim, Debtors now argue that they might someday end up with a viable section 542 claim. However, the Debtors' argument that a turnover claim might arise following future court rulings on PSI's defenses is only

7

speculative, the argument assuming facts and an adversary complaint that are not in existence or before the Court.

The Debtors continue to try and save Count I with a potential, future 542 claim. Should a court in the future find there are no enforceable contracts for the attempted "sales" by Desa to PSI, PSI remains glad to return the product, and there would be no need for a future section 542 turnover claim against defendant PSI. Also, the future 542 claim that Debtors claim might arise would be for the estate to recover a different property -- product, as opposed to the money that Debtors seek in the actual, pending Count I.

Plaintiffs' section 542 count does not state a claim. The count should not survive and be considered within the core/non-core analysis.

### 2. Plaintiffs' Supposed Bankruptcy-Type Claim, the "Turnover" Claim, is Not a Core Matter.

The Litigation matters are non-core. The supposed bankruptcy–type claim, the section 542 claim (which does not state a claim), does not genuinely hinge on a Bankruptcy Code provision. The foundation, substance and essence of the attempted 542 claim is state contract law.

The Litigation has no significant impact on a plan (a core bankruptcy matter) -- there is no plan of record. As of the time of preparation of this Reply, the Debtors had filed no plan, whether reorganization or liquidation and, in their Response, Debtors provide no assurance on the cases' direction. Where is the Litigation's interconnection with a core bankruptcy matter such as a chapter 11 plan, a chapter 11 reorganization, or a plan confirmation?

Further, no matter how the Debtors try to parse the transactions, the crux of the Litigation is merely pre-bankruptcy activity. Most of the Desa shipments, invoicing/supposed contract acceptance, and supposed breaches, occurred <u>prepetition</u>. Most of the alleged liability to Debtors arose (when Desa sent shipments/invoices), and came due (if at all), <u>prepetition</u>.[6] All of the purchase orders were placed by PSI <u>prepetition</u>. Plaintiffs' own Complaint exhibit shows that Desa's postpetition invoices/shipments (again, fraudulent) totaled only about $11,279.

All of the business conducted by PSI with Desa was <u>prepetition</u>, not with the Debtors-in-Possession. There was no post-petition business relationship between PSI and these liquidating debtors. PSI's actions after the bankruptcy filing were limited to trying to send back the fraudulently-shipped goods to the Debtors (who refused), and to disputing with the Debtors on the instant matters.

Should the Debtors be able to recover any part of the $123,000 claimed, it will have a nominal effect on the estates in this "mega" case. Any recovery to the Debtors may simply augment, slightly, the potential amount to the lenders. Where is the Litigation's intertwining with core bankruptcy matters?

In their Response, the Debtors suggest that if the alleged contracts are in the future declared unenforceable, then a possible future 542 turnover claim that supposedly might be needed would constitute a core bankruptcy matter. As discussed above, the argument on a potential, future cause of action should be quickly dismissed as hypothetical and speculative.

---

[6] PSI will show that, because Desa's actions (shipment, invoicing, and supposed contract acceptance) were fraudulent, the Debtors' claims raised in the Complaint never accrued, came due, or became payable in favor of Debtors.

9

In response to the Debtors' assertion that PSI's Answer defenses constitute core bankruptcy matters, as shown above, all of PSI's defenses are founded on pure state law, and PSI's defenses are routine state court defenses. PSI has not filed in this case any counterclaim or proof of claim.

The substance of the asserted "core" proceeding is a state law breach of contract matter. Respectfully, a state court would be better suited to decide the issues raised in the Litigation.

E.  **The Feasibility of Severing State Law Claims from Core Bankruptcy Matters to Allow Judgments to be Entered in State Court with Enforcement Left to the Bankruptcy Court.**

As shown, there are no core bankruptcy matters in the Litigation. There is no need to sever claims. The Litigation issues can be suitably handled in state court, and that court can decide any amount owing to Plaintiffs. Any recovery by the Plaintiffs would then be disposed of within the liquidating bankruptcy case.

F.  **The Burden of the Court's Docket.**

PSI incorporates its Motion material, including, without limitation, Judge Walsh's mid-2009 statement in the In re Fruit of the Loom, Inc. decision, regarding the Court's burdens.

Debtors admit the heavy burden on the Court's docket. If the Court abstains, it would be relieved from hearing the litigation matters in this proceeding that involves less than straightforward, fact-intensive contract, fraud and other issues. The state court can decide the issues raised in this Litigation, as state courts routinely do.

The Debtors once again argue that, depending on how issues might play out in the Litigation, the Debtors might someday hold viable section 542 or 549 claims for this

Bankruptcy Court to decide. PSI discusses these hypothetical claims in the above sections.

In response to the Debtors' repeated claim estimation argument, PSI has filed no proof of claim. In any event, the occurrence of a chapter 11 confirmation estimation proceeding is only speculative and remote when considering the actual record in these cases.

### G. The Likelihood that the Commencement of the Proceeding in Bankruptcy Court Involves Forum Shopping by One of the Parties.

Plaintiffs' filing of the Litigation in this Bankruptcy Court meets the "forum shopping" definition cited by PSI in its Motion.

In addition, the Plaintiffs' Response shows that the Plaintiffs do not dispute that all of the activities which form the basis for the parties' claims and defenses occurred outside of Delaware. The only nexus between the Litigation and Delaware that Plaintiffs could cite in the Response is the fact of the chapter 11 filing in Delaware. PSI submits that this lone connection is woefully insufficient to support an exercise of jurisdiction over this Litigation.

In the event a balancing of litigation costs is a relevant discretionary abstention factor, once again, the Debtors failed to present evidence to support their fact allegations, this time on the alleged cost savings by litigating in Delaware.

### H. The Existence of a Right to a Jury Trial.

Plaintiffs claim that PSI lacks jury trial rights. However, PSI has only filed defenses in response to the Complaint. PSI has filed no counterclaim or proof of claim in this case. PSI has a right to a jury on the issues so triable. "As this Court is not authorized to conduct jury trials, this factor favors abstention." See Laroche, 312 B.R. at

255. The Litigation, in which PSI holds jury rights, belongs in a forum where underlying activities actually occurred, rather than Delaware.

## CONCLUSION

PSI respectfully requests that this Court permissively abstain from exercising jurisdiction over this adversary proceeding.

TYBOUT, REDFEARN & PELL

SHERRY RUGGIERO FALLON
Bar ID # 2464
750 Shipyard Drive, Suite 400
P.O. Box 2092
Wilmington, DE 19899-2092
Tel: (302) 658-6901

Of Counsel

Bruce Z. Walker, Esquire
COHEN, POLLOCK, MERLIN & SMALL
Georgia Bar No. 731260
3350 Riverwood Parkway, Suite 1600
Atlanta, GA 30339
Telephone: (770) 858-1288
Facsimile: (770) 858-1277
bwalker@cpmas.com

DATED: 4/5/10

*Attorneys for Peter Skop Industries, Inc.*