**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DHP HOLDINGS II CORP., | ) | Case No. 08-13422  (MFW) |
| et al., | ) | |
| Debtors. | ) | Jointly Administered |
| _____ | ) | |
| | ) | |
| DHP HOLDINGS II CORP., | ) | |
| et al., | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adversary No. 09-52811  (MFW) |
| | ) | |
| PETER SKOP INDUSTRIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM OPINION[1]**

Before the Court is the Motion for Permissive Abstention
filed by the Defendant, Peter Skop Industries, Inc. ("PSI"), in
the above captioned adversary proceeding.  After considering the
arguments presented by both parties and for the reasons set forth
below, the Court will grant the Motion.

I.   <u>BACKGROUND</u>

On December 29, 2008, DHP Holdings II Corporation and
several of its affiliates (collectively "the Debtors") filed
voluntary petitions for relief under chapter 11 of the Bankruptcy

---

[1]  This Opinion constitutes the findings of fact and conclusions
of law of the Court pursuant to Rule 7052 of the Federal Rules of
Bankruptcy Procedure.

Code.

The Debtors manufactured, distributed and marketed several products, including vent-free heating appliances, outdoor heaters, lawn and garden electrical products and consumer fastening systems.  PSI purchased certain products by placing purchase orders with the Debtors, and the Debtors shipped products and contemporaneously issued invoices to PSI.

The Debtors' invoices to PSI total approximately $123,261 for products shipped pre and post-petition between October 12, 2008, and February 1, 2009.  PSI refused to pay the outstanding invoices, despite the Debtors' demand for payment.  Invoices that became due pre-petition total $96,574.69; invoices which became due post-petition total $27,526.17.[2]

On November 20, 2009, the Debtors commenced this adversary proceeding by filing a complaint to recover the amounts due under the invoices.  The Debtors seek a judgment for turnover of property pursuant section 542 of the Bankruptcy Code, breach of contract, and to disallow any claims of PSI pursuant to section 502(d).

In its answer, filed on January 20, 2010, PSI denies that it owes a debt to the Debtors because, among other things, the

---

[2]  The Debtors and PSI disagree on whether any purchase orders were placed post-petition.  PSI asserts that it did not place any orders following the Petition Date; the Debtors assert that PSI placed post-petition orders totaling $11,730.88.

Debtors fraudulently misrepresented their financial condition in order to induce PSI to purchase products, even though the Debtors were aware that they would not be able to satisfy their warranty obligations.  As a result, PSI states that the products it received are of no commercial value.  Also, PSI denies liability because the Debtors are in breach of their contractual obligation to reimburse PSI on warranty claims brought by PSI's customers who bought their products.  Finally, PSI argues that it has setoff and recoupment rights due to known warranty claims, anticipated warranty claims, and tort claims by customers who purchased the Debtors' products from it.  PSI asserts that it is entitled to a trial by jury.

Before the Court is the motion by PSI for permissive abstention from the exercise of jurisdiction over the instant adversary proceeding.  The Debtors oppose the motion.  Briefing on the motion was completed on April 7, 2010, and the matter is ripe for decision.

II.  <u>JURISDICTION</u>

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) & 157(a).

III. <u>DISCUSSION</u>

PSI requests that the Court permissively abstain from exercising jurisdiction over the instant adversary proceeding. 11 U.S.C. § 1334(c)(1) ("[N]othing in this section prevents a . . . court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.")  In determining whether abstention is appropriate under section 1334(c)(1), courts typically consider twelve factors:

(1) The effect or lack thereof on the efficient administration of the estate;
(2) the extent to which state law issues predominate over bankruptcy issues;
(3) the difficulty or unsettled nature of the applicable state law;
(4) the presence of a related proceeding commenced in state court or other non-bankruptcy court;
(5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334;
(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
(7) the substance rather than the form of an asserted "core" proceeding;
(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
(9) the burden of the court's docket;
(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
(11) the existence of a right to a jury trial; and
(12) the presence in the proceeding of non-debtor parties.

<u>See, e.g.</u>, <u>Continental Airlines, Inc. v. Allen (In re Continental</u>

4

Airlines, Inc.), 156 B.R. 441, 443 (Bankr. D. Del. 1993).

The evaluation of these factors is not "merely a mathematical exercise." Trans World Airlines, Inc. v. Karabu Corp. (In re Trans World Airlines, Inc.), 196 B.R. 711, 715 (Bankr. D. Del. 1996). Courts place more weight on some of the factors than others; particularly important are factors (1) the effect on the administration of the estate, (2) whether the claim involves only state law issues, and (7) whether the proceeding is core or non-core. See, e.g., Fruit of the Loom, Inc. v. Magnetek, Inc. (In re Fruit of the Loom, Inc.), 407 B.R. 593, 600 (Bankr. D. Del. 2009); Republic Underwriters Ins. Co. v. DBSI Republic, LLC (In re DBSI, Inc.), 409 B.R. 720, 729 (Bankr. D. Del. 2009) Ultimately, the decision "is left up to the broad discretion of the bankruptcy court." DBSI, Inc., 409 B.R. at 729; In re RNI Wind Down Corp., 348 B.R. 286, 295 (Bankr. D. Del. 2006) (quoting Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.), 304 F.3d 223, 232 (2d Cir. 2002)).

A.   Effect on efficient administration of the estate

PSI argues that this adversary proceeding involves almost no impact on the administration of the estate. PSI states that the $123,261 sought by the Debtors will have minimal effect on unsecured creditor recovery and that the litigation is not "inextricably intertwined" with administration of the bankruptcy cases. PSI notes that the Debtors' recovery of the funds will

5

only be used to pay the Debtors' secured lenders.  Further, PSI

argues that even if recovery would enhance distributions to

unsecured creditors, this factor alone does not warrant the

Court's retention of jurisdiction over the adversary proceeding.

See LaRoche Indus., Inc. v. Orica Nitrogen LLC (In re LaRoche

Indus., Inc.), 312 B.R. 249, 254 (Bankr. D. Del. 2004) (finding

that this factor favored abstention where the debtor's bankruptcy

case had closed, subsequent to plan confirmation and

consummation, resulting in the action having "no effect on

creditors or their recovery in this case.").  Furthermore, PSI

argues that because these cases are liquidating rather than

reorganizing, the timing of the litigation is less significant

than if the Debtors were in a pre-confirmation stage.  PSI

contends that the administration of the estate will not be

delayed or hampered by instituting a new action because little

has happened in this adversary proceeding.  Therefore, the delay

which may be occasioned by abstention will not be prejudicial.

See Official Comm. of Unsecured Creditors of Integrated Health

Servs., Inc. v. Elkins (In re Integrated Health Servs., Inc.),

291 B.R. 615, 619 (Bankr. D. Del. 2003).

Although the amount of money in this case is not

significant, the Debtors argue that their ability to collect

quickly receivables owed to them is central to the administration

of the estate because it will affect the amount and timing of any

distribution to creditors.  The Debtors dispute PSI's contention that only secured lenders will receive payment, asserting that they have liquidated assets in excess of the Debtors' initial projections and anticipate a recovery for unsecured creditors. The Debtors also contend that PSI's defenses have the potential to affect administration of the estate as they could increase the Debtors' liabilities.  Further, the Debtors assert that granting abstention will result in less potential recovery for the estate because of the costs and delay associated with filing and prosecuting an action against PSI in another jurisdiction.  The Debtors also contend that any delay would have disastrous effects on the estate's administration possibly resulting in a conversion of the Debtors' cases and further delay and costs because a trustee would need to be appointed, a section 341 meeting would need to be held, the trustee would need time to familiarize itself with the administration of the estate, and new counsel would need to be hired to prosecute the pending adversary proceedings.  The Debtors argue that the <u>LaRoche</u> decision is easily distinguished because in that case a plan had already been confirmed and consummated.  <u>LaRoche</u>, 312 B.R. at 254.

The Court is not convinced by the Debtors' arguments that abstention will significantly affect the administration of the estate.  The Debtors admit that the amount at issue in this adversary proceeding is not significant and it certainly is not

the linchpin for determining how the Debtors' bankruptcy cases will proceed.  Further, the Court takes notice of the status of the bankruptcy cases: on August 2, 2010, the Court granted the Debtors' own motion to convert their cases to chapter 7. Therefore, the consequences that the Debtors argued would occur if the cases are converted have already occurred and are unrelated to whether abstention in this adversary is warranted.

Admittedly the filing of a new complaint will increase costs; however, it does not appear that the delay attendant with bringing a new action will delay distribution in these cases, as a chapter 7 trustee was appointed only recently.  Also, the adversary proceeding will have little effect upon creditors' recovery because the amount that the Debtors seek is not significant.  Cf. Integrated Health Servs., 291 B.R. at 620 (finding that this factor favored abstention despite the fact that the adversary proceeding sought in excess of $78 million which would "significantly increase the amount which creditors will receive" because it was only one of several significant claims being pursued in those chapter 11 cases).  The Debtors' arguments that its overall ability to collect amounts due is vital to its bankruptcy is not relevant here.  PSI's abstention motion only relates to this adversary proceeding; the Court will not take a global view.

The Debtors' argument that PSI's defenses will significantly affect the estate administration is also not persuasive.  PSI is seeking to hold the Debtors liable on warranty and tort claims arising from the products that it resold, but it appears that PSI is only seeking to recover to the extent that it can set off the amounts it owes to the Debtors.  Thus, the Court concludes that this factor favors abstention.

B.   <u>Extent state law issues predominate</u>

PSI argues that this action is a contract dispute where state law predominates and that bankruptcy law has almost no substantive effect on the outcome.  PSI argues that the Debtors' purported section 542 turnover claim is actually a pure state law contract action because the amount due is disputed.  <u>See</u> <u>United States v. Inslaw, Inc.</u>, 932 F.2d 1467, 1472 (D.C. Cir. 1991) ("It is settled law that the debtor cannot use the turnover provisions to liquidate contract disputes or otherwise demand assets whose title is in dispute."); <u>Am. Home Mortgage Inv. Corp. v. Lehman Bros. Inc. (In re Am. Home Mortgage, Holdings, Inc.)</u>, 388 B.R. 69, 94 (Bankr. D. Del. 2008) (holding that title to the debt was in dispute and an action for turnover was premature); <u>Miller v. Greenwich Capital Fin. Prods., Inc. (In re Am. Bus. Fin. Servs., Inc.)</u>, 361 B.R. 747, 761 (Bankr. D. Del. 2007) (dismissing the turnover count because the trustee's right to collect hinged upon obtaining a judgment in its favor); <u>Hechinger Inv. Co. of Del. v.</u>

<u>Allfirst Bank (In re Hechinger Inv. Co. of Del.)</u>, 282 B.R. 149,
162 (Bankr. D. Del. 2002) (holding that turnover was not
available where the Debtor's claim to funds was disputed and
unliquidated).  PSI claims that this proceeding is not a simple
action to collect a receivable representing a matured debt;
rather, PSI's misrepresentation defense will be a fact-intensive
and complicated state law issue.

The Debtors admit that state law issues are significant in
determining both their section 542 and breach of contract claims;
however, they argue that bankruptcy law also plays a significant
role.  First, the Debtors argue that if PSI's defense of fraud is
correct, then the Bankruptcy Code will be implicated in several
respects.  For example, if the Court finds that there was no
contract due to the Debtors' fraud, then the Debtors assert that
the agreement will be rescinded and the Debtors will be able to
seek turnover of the goods they sold pursuant to section 542.
Second, the Debtors contend that PSI's affirmative defenses of
setoff and recoupment are defenses based upon section 553 of the
Bankruptcy Code.  Third, the Debtors argue that to the extent PSI
seeks to find the Debtors liable on the warranty claims, PSI will
have a claim against the estate according to section 101(5).
Finally, the Debtors assert that their count to disallow PSI's
claims pursuant to section 502(d) is based on the Bankruptcy
Code.  Therefore, the Debtors believe that it is more appropriate

10

to decide these issues in this Court than in a state court.

The Court agrees with PSI that this dispute involves predominantly state law issues.  The Debtors are seeking to recover debts that are based upon a state law breach of contract, and PSI denies liability based upon state law fraud and breach of contract.  PSI's denial of liability on the underlying debt renders the Debtors' claim premature and not subject to a turnover action.  See 11 U.S.C. § 542 (allowing a trustee to recover debts that are "matured, payable on demand, or payable on order . . . .").  See also, Inslaw, 932 F.2d at 1472.

Similarly, the Debtors' count to disallow PSI's claims under section 502(d) is premature because the Debtors do not yet have a judgment against PSI and PSI has not even filed a proof of claim.  See, e.g., In re Worldwide Direct, Inc., No. 99-108, 2000 WL 33712474 (Bankr. D. Del. Nov. 22, 2000).

The Court further concludes that PSI's setoff and recoupment defenses are state law questions as well.  See Citizens Bank of Maryland v. Strumpf, 516 U.S. 16, 18 (1995) (stating that setoff is not a federal right created under the Bankruptcy Code); In re Telephone Warehouse, Inc., 259 B.R. 64, 68 (Bankr. D. Del. 2001) (stating that setoff is a matter of state law subject to certain restrictions under section 553 of the Bankruptcy Code).

Therefore, the Court concludes that state law issues predominate, and this factor favors abstention.  See, e.g., Fruit

11

of the Loom, 407 B.R. at 600 (holding that this factor favored abstention where the proceeding centered on an ordinary contract dispute under New York state law and no Bankruptcy Code provision was implicated); LaRoche, 312 B.R. at 254 (holding that a contract dispute, where no provision of the Bankruptcy Code is implicated, is governed by state law); Sun Healthcare Group Inc. v. Levin (In re Sun Healthcare Group, Inc.), 267 B.R. 673, 679 (Bankr. D. Del. 2000) (finding that state law issues dominated the litigation, thereby favoring abstention).

    C.   Unsettled issues of state law

PSI argues that if unsettled or difficult state law issues arise, the state court is better suited to handle them. See Omna Med. Partners, Inc. v. Carus Healthcare, P.A. (In re Omna Med. Partners, Inc.), 257 B.R. 666, 669 (Bankr. D. Del. 2000) ("We are unaware of any unsettled or difficult question of Texas state law; however, the Texas state court is the better forum to decide such an issue, should one arise."); Sun Healthcare Group, 267 B.R. at 679 ("While California law on non-compete clauses is not unsettled, we conclude that the California state court is the better forum to decide the issue."); Integrated Health Servs., 291 B.R. at 620 ("Even if a matter does not involve unsettled issues of state law, where the state law issues so predominate the proceeding as they do in this case, this factor weighs in favor of having the state court decide it.").

The Debtors argue that this proceeding involves "straightforward breach of contract issues" that are not unsettled.  LaRoche, 312 B.R. at 254.  Furthermore, "abstention is best when novel or unsettled issues of state law are involved."  Integrated Health Servs., 291 B.R. at 620 (citing Williams v. Assocs. Fin., Inc. (In re Williams), 88 B.R. 187, 191 (Bankr. N.D. Ill. 1988)).  See also Great Am. Ins. Co. v. Mobile Tool Int'l, Inc. (In re Mobile Tool Int'l), 320 B.R. 552, 558 (Bankr. D. Del. 2005).  Moreover, the Debtors argue that this Court is better suited to handle any bankruptcy law issues that may arise.

The Court agrees with PSI.  As discussed previously, the Court finds that state law issues predominate in this adversary proceeding.  Although the parties have not identified any unsettled state law issues, a state court would be better positioned to identify and resolve any such issues, should they arise.  Therefore, the Court finds that this factor favors abstention.

D.   Presence of related proceeding in state court

PSI admits that there are currently no other pending proceedings in state court.  The Debtors argue that the extra delay and expense of filing a new proceeding in a state court would be detrimental to the recovery for creditors.

The Court agrees with the Debtors that this factor does not favor abstention.

E.   Independent federal jurisdiction

PSI does not offer any argument on the fifth factor of the balancing test for permissive abstention.

The Debtors argue that the federal court has diversity jurisdiction over this action pursuant to section 1332 because there is complete diversity of citizenship (Georgia and Delaware) and the amount in controversy is over $75,000.  See 28 U.S.C. § 1332(a).  Therefore, the Debtors contend that abstention should be denied.

The Court agrees with the Debtors that there exists an independent basis for federal jurisdiction; therefore, this factor does not favor abstention.

F.   Degree of relatedness to the main bankruptcy case

PSI argues that this case is unrelated to the main bankruptcy case because the amount will not have a significant effect on creditors' recovery.  Furthermore, it argues that this dispute is grounded in contract law, not bankruptcy law.  Therefore, PSI contends that abstention is appropriate.

The Debtors argue that this proceeding is not remote because recovery will impact payment to creditors as well as determine the estate's liability to PSI, if any.  See Mobile Tool, 320 B.R. at 558 (finding that this factor did not favor abstention because

14

the adversary involved "potential liabilities of the Estate, the very essence of a bankruptcy case.").

The Court agrees with PSI that this case is not closely related to the main bankruptcy case because the dispute "is not inextricably intertwined with the administration of the estate." Integrated Health Servs., 291 B.R. at 621 (finding that this factor did not favor abstention even though successful prosecution of the claims might result in an enhanced distribution to creditors). The amount sought by the Debtors is relatively small and PSI seeks to reduce its liability to the Debtors only in an amount that will reduce the Debtors' claim by setoff or recoupment. Even if additional recovery for creditors would result, this does not mean it is related to the bankruptcy case to a significant degree. Id. Therefore, the Court finds that this factor favors abstention.

G.    Core or non-core

Courts determine whether a proceeding is core by consulting two sources. Halper v. Halper, 164 F.3d 830, 836 (3d Cir. 1999). First, a court must consult section 157(b) of title 28 which provides an "illustrative list of proceedings that may be considered 'core.'" Id. Second, the court must apply the Third Circuit's test to determine whether it is core: "a proceeding is core if (1) it invokes a substantive right provided by title 11 or (2) if it is a proceeding, that by its nature, could arise

15

only in the context of a bankruptcy case." Id. Each cause of

action or claim must be analyzed separately to determine if it is

core or non-core.  Id. at 839.

The Debtors rely on section 157(b)(2)(B), (E), and (O) of

title 28 to argue that this adversary is a core proceeding.

Those sections state that core proceedings include "allowance or

disallowance of claims against the estate," "orders to turn over

property of the estate," and "other proceedings affecting the

liquidation of the assets of the estate or the adjustment of the

debtor-creditor or the equity security holder relationship,

except personal injury tort or wrongful death claims."  11 U.S.C.

§ 157(b)(2)(B), (E), & (O).  That is not the end of the inquiry,

however; the Court must determine if the substantive rights are

provided by title 11 or could only arise in the context of a

bankruptcy case.  Halper, 164 F.3d at 839.

> 1.   Debtors' turnover claim

PSI argues that the Debtors' turnover claim is a pure state

law claim for breach of contract, which it argues is a non-core

proceeding because it is not a substantive right provided by

title 11 or that could only arise in a bankruptcy case.  PSI

argues that the claim is not a valid turnover claim under section

542 of the Code, because PSI disputes that any debt is owed to

the Debtors.  Inslaw, 932 F.2d at 1472 (stating that it is

settled that it is not appropriate to invoke section 542 to

16

"liquidate contract disputes or otherwise demand assets whose
title is in dispute."). Because the section 542 claim is
premature, PSI argues that the Debtors have not established that
their substantive rights are provided by title 11 or arise only
in the context of their bankruptcy cases. See Beard v.
Braunstein, 914 F.2d 434, 444 (3d Cir. 1990) (holding that the
proceeding did not invoke a substantive right provided by title
11 that could arise only in a bankruptcy case because "it is a
garden variety contract claim. . . .").

    The Debtors argue that all claims and defenses in this
adversary proceeding are core, and abstention should be denied.
The Debtors argue that their claim is a simple accounts
receivable turnover claim, where they delivered products and
issued invoices which are now past due and mature. Allegheny,
Inc. v. Laniado Wholesale Co. (In re Allegheny, Inc.), 68 B.R.
183, 190 (Bankr. W.D. Pa. 1986) (holding that a court has
turnover jurisdiction where the debtor's claim is certain;
stating that a "claim for an overdue account, specific in its
terms as to amount due and date payable, constitutes a matured
debt."). Accordingly, the Debtors argue that their section 542
claim is core because it is a substantive right provided by title
11 or one that could only arise in a bankruptcy case. See, e.g.,
Oglebay Norton Co. v. Port (In re ONCO Inv. Co.), 320 B.R. 577,
581 n.2 (Bankr. D. Del. 2005) (concluding that an action to

17

recover an accounts receivable owed to the debtor is a core proceeding); Miller v. Printech Instant Ads, Inc. (In re LILA, Inc.), 133 B.R. 588, 590 (Bankr. E.D. Pa. 1990) (holding that a simple account receivable claim is a core proceeding).

The Court finds that the turnover proceeding is non-core. While section 542 allows a debtor to recover matured debts, PSI disputes that the underlying debt is due. Therefore, the Court finds that this dispute is not properly brought under section 542. The action is non-core because it is "nothing more than a state law breach of contract claim disguised in bankruptcy terms." Valley Media, Inc. v. Toys R Us, Inc. (In re Valley Media, Inc.), 289 B.R. 27, 31 (Bankr. D. Del. 2003). See also 5 Collier on Bankruptcy ¶ 542.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("An action for turnover is a core proceeding because it is a substantive right created under federal bankruptcy law. However, where title to the property sought to be turned over to the bankruptcy estate is in dispute, such an action can only constitute, at the most, non-core rather than core proceedings, given that such actions are not true turnover actions.").

Thus, the Court concludes that the second prong of the Third Circuit's test is not satisfied because the substance of the claim is a pre-petition state law contract claim which "could arise under any context, not just in bankruptcy." Valley Media,

289 B.R. at 31.  <u>See also</u> <u>LaRoche</u>, 312 B.R. at 254 ("[T]he

essence of this claim is a contract dispute, not a bankruptcy law

dispute.  While the Debtor argues that the case involves a

request for turnover of property of the estate under section 542,

it is really only seeking to collect a debt. . . ."); <u>Fruit of</u>

<u>the Loom</u>, 407 B.R. at 601 ("[T]he ordinary contract dispute

exists outside of bankruptcy.  Thus, the adversary proceeding is

not a 'core' proceeding, and this factor favors abstention.").

      The Debtors argue nonetheless that part of their claim is

for money due post-petition, which is typically considered core.

<u>See, e.g.</u>, <u>Shubert v. Wellspring Media, Inc. (In re Winstar</u>

<u>Commc'ns, Inc.)</u>, 335 B.R. 556, 564-65 (Bankr. D. Del. 2005)

(holding that breach of a post-petition contract with a debtor is

a core proceeding); <u>E. Elec. Sales Co. v. Gen. Elec. Co.</u>, 94 B.R.

348, 349 (E.D. Pa. 1989) (holding that recovering on post-

petition debt is core because it arises under title 11); <u>LaRoche</u>,

312 B.R. at 253 (stating that a majority of courts hold that a

post-petition breach of contract action is a core proceeding).

      PSI disputes that it had a significant post-petition

relationship with the Debtors, because almost the entire

contract, delivery of goods, and most of the alleged breaches

occurred before the petition date.  Specifically, PSI asserts

that it did not place any post-petition orders.  It admits that

22% of the invoices became due post-petition, but asserts they

were based on orders placed pre-petition. PSI argues that its post-petition relationship with the Debtors was minimal. Therefore, PSI argues that this dispute should be considered non-core.

The Debtors contend that this a core proceeding because PSI placed post-petition orders totaling $11,730.88. Courts typically find that post-petition breaches of contract are core because the counter-party to the debtor "know[s] that they are dealing with an agent responsible to a bankruptcy court; that the bankruptcy court would resolve subsequent disputes should therefore come as no surprise." Beard, 914 F.2d at 445.

Here, the parties agree that PSI's purchase orders constituted offers to enter into contracts, which the Debtors accepted by delivering products. The parties agree that certain of the products were shipped pre-petition, but did not become due until after the Petition Date, by virtue of the invoice credit terms (net 30 days). The Court holds that those claims are not core claims, as they relate entirely to pre-petition orders and shipments. PSI disputes that it placed any purchase orders post-petition; rather PSI asserts that at most it placed orders pre-petition which were not delivered (accepted) until after the Petition Date. The Court finds that merely neglecting to revoke minimal purchase orders placed pre-petition does not amount to PSI knowingly "dealing with an agent responsible to a bankruptcy

20

court." Id.  To the extent that PSI did place purchase orders
post-petition (as the Debtors assert) making this a core
proceeding, the Court would still have discretion to abstain, as
this is only one factor to be weighed under a permissive
abstention analysis.  See LaRoche, 312 B.R. at 253-54 (finding
that permissive abstention was appropriate even though the claims
were core); In re Lyondell Chem. Co., 402 B.R. 596, 611 n.32
(Bankr. S.D.N.Y. 2009) (stating that determining "whether or not
a matter is core is not determinative of decisions as to
discretionary remand or discretionary abstention."); Omna Med.
Partners, 257 B.R. at 669 (granting motion for permissive
abstention over core proceedings).

     The Court concludes that because even under the Debtors'
calculations less than 10% of the invoices involve post-petition
orders, this action is largely non-core.  See, e.g., Beard, 914
F.2d at 445 (holding that "this action, involving pre-petition
contracts, allegedly breached both before and after the filing of
the petition, is entirely a non-core matter related to a case
arising under title 11.").

          2.   PSI's defenses

     The Debtors argue that PSI's defenses are also core because
they are claims against the estate.  28 U.S.C. § 157(b)(2)(B) &
(O).  PSI disagrees and notes that its defenses are based upon
state law and that it has not filed any counterclaims or proofs

of claim against the estate.

Creditors can subject themselves to bankruptcy court jurisdiction by filing claims against the estate. Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 58 (1989).  See also Sprinkler Co. v. Meyertech Corp. (In re Meyertech Corp.), 831 F.2d 410, 417-18 (3d Cir. 1987) (holding that creditor's proof of claim for breach of warranty brought the matter within the bankruptcy court's core jurisdiction).  Courts have held that it is not necessary to have filed a formal proof claim against the estate to be a claimant.  See Hefta v. Am. Classic Voyages, Co. (In re Am. Classic Voyages Co.), 405 F.3d 127, 131 (3d Cir. 2005) (discussing the requirements of an informal proof of claim); Barlow v. M.J. Waterman & Assocs., Inc. (In re M.J. Waterman & Assocs., Inc.), 227 F.3d 604, 608-11 (6th Cir. 2000); Nikoloutsos v. Nikoloutsos, 199 F.3d 233, 236-37 (5th Cir. 2000). Parties can submit to a bankruptcy court's jurisdiction based upon other types of conduct as well.  See, e.g., Universal Oil, Ltd. v. Allfirst Bank (In re Millenium Seacarriers, Inc.), 419 F.3d 83, 98 (2d Cir. 2005) (holding that party was subject to bankruptcy court's jurisdiction where it objected to sale order and actively litigated its claim in the bankruptcy court).

Some courts have held that raising a counterclaim in an adversary proceeding is akin to making a claim against the estate.  See, e.g., Hedstrom Corp. v. Wal-Mart Stores, Inc. (In

22

re Hedstrom Corp.), No. 04-38543, 2006 WL 1120572, at *2-3 (N.D. Ill. April 24, 2006) (holding that setoff, even when raised as an affirmative defense, is a claim against the estate that "directly impacts the distribution of the bankrupt's assets . . . ."); N. Am. Energy Conservation, Inc. v. Interstate Energy Res., Inc. (In re N. Am. Energy Conservation, Inc.), No. 00-40563, 2000 WL 1514614, at *2 (S.D.N.Y. Oct. 12, 2000) (holding that setoff is a claim against the bankruptcy estate that subjects a party to the bankruptcy court's jurisdiction, even if it is labeled as an affirmative defense); Commercial Fin. Servs., Inc. v. Jones (In re Commercial Fin. Servs., Inc.), 251 B.R. 397, 406 (Bankr. N.D. Okla. 2000) (finding that assertion of setoff rights invokes the claims allowance process when asserted as a counterclaim or a defense); Elec. Mach. Enter. v. Hunt Constr. Group, Inc. (In re Elec. Mach. Enter.), 416 B.R. 801, 870 (Bankr. M.D. Fla. 2009) (holding that setoff or recoupment are considered counterclaims against the estate, even if pled as a defense).

Other courts disagree. See, e.g., Styler v. Jean Bob Inc. (In re Concept Clubs, Inc.), 154 B.R. 581, 589 (D. Utah 1983) (holding that asserting a setoff defense did not constitute a claim against the bankruptcy estate where creditor only sought to reduce or extinguish the estate's claim against it).

Defenses to an action are distinct from counterclaims. A counterclaim sets forth an independent right to payment; whereas

23

a defense is merely a response to a claim.  Nat'l Union Fire Ins.
Co. of Pittsburgh v. City Savings, F.S.B., 28 F.3d 376, 393-94
(3d Cir. 1994).  Courts need not accept the label that a litigant
places on its purported defense or counterclaim.  Fed. R. Civ. P.
8(c)(2) ("If a party mistakenly designates a defense as a
counterclaim, or a counterclaim as a defense, the court must, if
justice requires, treat the pleading as though it were correctly
designated . . . .").  See also Nat'l Union Fire Ins., 28 F.3d at
394.

        Here, PSI has asserted various affirmative defenses in its
answer, which it argues are not claims or counterclaims against
the estate but are asserted only to reduce its liability to the
Debtors.  First, PSI raises as a defense that the Debtors have
breached the contract.  According to PSI, the Debtors are
contractually obligated to reimburse PSI for the cost of
resolving warrant claims associated with the Debtors' products
which were resold by the PSI.  Specifically, PSI argues that the
Debtors are obligated to pay PSI the cost of resolving products
liability, personal injury, and other tort claims of its
customers who bought products that the Debtors manufactured.  PSI
also raised as an affirmative defense the Debtors' fraudulent
actions.  PSI argues that the Debtors made false representations
about their financial condition, inducing PSI to purchase the
Debtors' products.  PSI argues that it is entitled to setoff and

24

recoupment of its warranty and fraud claims against amounts that it may otherwise owe to the Debtors.

The Third Circuit has held that recoupment is a defense, not a claim.  Folger Adam Sec., Inc. v. Dematteis/MacGregor, JV, 209 F.3d 252, 260 (3d Cir. 2000).  Recoupment is "the setting up of a demand arising from the same transaction as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim."  In re University Medical Center, Inc., 973 F.2d 1065, 1079 (3d Cir. 1992) (citing 4 Collier on Bankruptcy § 553.03 at 553-15-17).  In this case PSI's breach of contract and fraud claims clearly arise from the same transaction as the Debtors' claims.  As a result, the Court concludes that the affirmative defenses asserted by PSI are merely defenses and not claims.  Consequently, they are not core.[3]

Therefore, the Court concludes that this factor favors abstention.

---

[3]  Even if PSI's defenses were counterclaims, however, the Third Circuit has held that a "defendant does not waive objections to jurisdiction and venue by asserting a compulsory counterclaim." Beard, 914 F.2d at 442.  PSI's defenses are based upon, or bear a logical relationship, to the same contract or transaction as the Debtors' claim and are, therefore, compulsory counterclaims. See, e.g., Great Lakes Rubber Corp. v. Herbert Cooper Co., 286 F.2d 631, 634 (3d Cir. 1961) (holding that a "counterclaim is compulsory if it bears a 'logical relationship' to an opposing party's claim.").

H.   <u>Feasibility of severing core matters</u>

PSI believes that all matters are non-core, and therefore, there is no need to sever state law claims from core bankruptcy matters.

The Debtors argue that it is not feasible to sever the core bankruptcy issues from the state law issues.  They assert that all their claims are core, and, even if not, PSI's defenses are core.  The Debtors contend that a state court could not hear part of the dispute while the bankruptcy court heard the rest of it.

Because the Court has concluded that all the claims and defenses are non-core, severing counts need not be done.  In addition, it is feasible and preferable for the state court to handle this contract claim dispute.  <u>See</u> <u>Omna Med. Partners</u>, 257 B.R. at 669 ("It is feasible . . . to allow the state court to conclude the case in front of it, leaving for this Court only a determination as to the effect of the bankruptcy filing on the parties' rights."); <u>Sun Healthcare Group</u>, 267 B.R. at 679 (allowing judgments to be entered in state court with the enforcement left to the bankruptcy court).  Thus, this factor favors abstention.

I.   <u>Burden on the court's docket</u>

PSI argues that the Court's docket is already overburdened and this fact-intensive fraud litigation should go to state court.  The Debtors argue that abstention will not significantly

lighten the Court's load.

The Court agrees with PSI.  The Court's docket is overburdened especially since the country is "in the midst of the most severe recession and credit crisis in decades, and the volume of major chapter 11 filings in this Court has risen to an unprecedented level."  Fruit of the Loom, 407 B.R. at 601.  See also LaRoche, 312 B.R. at 255 ("This Court is tremendously over-burdened.  This action will unnecessarily add to that burden.").  The contract dispute (and fraud defenses) will involve fact-intensive litigation.

In addition, PSI has asserted it is entitled to a jury trial.  If that is true, the state court would be a better forum because the Court cannot conduct a jury trial.  See Valley Media, 289 B.R. at 32 (noting that the bankruptcy court cannot conduct a jury trial and adversary proceeding would have to be tried in the District Court).  In addition, although the reference of this adversary proceeding could be withdrawn and the District Court could conduct a jury trial, the Court takes judicial notice of the fact that the District Court currently has only half of its allowed judgeships filled and is itself extremely overburdened.  Therefore, this factor favors abstention.

J.   Forum shopping

PSI argues that the Debtors are forum shopping by attempting to litigate this action in Delaware.  The Debtors argue that they

are not forum shopping.  They chose Delaware because it is
central to the administration of the estate and will reduce
administration costs resulting in more money for creditors as
fast and easily as possible.

The Court concludes that the Debtors are not forum shopping
by filing in this Court because Delaware was the situs for the
Debtors' bankruptcy case.  PSI has not submitted any evidence to
prove forum shopping and "[w]ithout some showing that [the
Debtors are], in fact, seeking a better result by shopping
around," this factor does not favor abstention.  <u>Valley Media</u>,
289 B.R. at 32.

K.   <u>Right to jury trial</u>

PSI argues that it has a right to a jury trial and
therefore, that handling this dispute in bankruptcy court is
inappropriate.  PSI asserts that it did not file any counter-
claims, but only affirmative defenses, which should not affect
its right to trial by jury.

The Debtors argue that there is no right to trial by jury
because PSI raised the affirmative defense of fraud.
Furthermore, they state that this factor is not dispositive
because the reference could be withdrawn and this adversary
proceeding transferred to the District Court for a jury trial.

As noted, this Court is not authorized to conduct jury
trials.  <u>See, e.g.</u>, <u>LaRoche</u>, 312 B.R. at 255.  Breach of contract

actions are triable by jury.  See Fruit of the Loom, 407 B.R. at 601 ("breach of contract is triable by a jury.").  Therefore, the Court concludes that this factor favors abstention.

L.   Presence of non-debtor parties

PSI offers no argument on this factor.  The Debtors argue that the proceeding was initiated by the Debtors and directly affects their rights and liabilities moving forward.  Therefore, they contend that abstention should be denied.

This proceeding does not involve only non-debtor parties. Therefore, the Court concludes that this factor does not favor abstention.

M.   Summary

Although evaluating the twelve factor test is not a mathematical formula, in summary, the Court finds that an overwhelming majority of the factors weigh in favor of abstention.  Trans World Airlines, 196 B.R. at 715.  Furthermore, the Court finds that the more significant factors (the effect on the administration of the estate, whether the claim involves only state law issues, and whether the claims are considered core) support abstention.

IV.  CONCLUSION

For the reasons stated above, PSI's motion for abstention will be granted.

29

An appropriate order is attached.


Dated: August 13, 2010                    BY THE COURT:

                                          _____
                                          Mary F. Walrath
                                          United States Bankruptcy Judge